DOC NO
REC'D/FILED

UNITED STATES DISTRICT COURT
WESTERN DICTRICT OF WISCONSIN 14 MAR 26 PM 1: 22

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

**KENNETH RAY PARRISH,**

Plaintiff,

v.                                               CASE No.12-cv-750-bbc

**DEBORAH McCULLOCH** Treatment Director of,
Sand Ridge Secure Treatment Center,
Captain **WILLIAM PARKER**, Supervisor, Of Mailroom and Property
Sand Ridge Secure Treatment Center

Defendants.

# PLAINTIFF'S MOTION TO APPEAL DECISION AND ORDER FROM UNITED STATES DISTRICT COURT WESTERN DICTRICT OF WISCONSIN

Defendants, by their attorneys, J.B. Van Hollen, Attorney General, and Jody J. Schmelzer, Assistant Attorney General, hereby submit this brief in support of their motion for summary judgment.

## OPPOSITION
### ISSUES PRESENTED

1. Are the defendants entitled to judgment as a matter of law on Parrish's access to courts claim under the Heck doctrine?
2. In any event, are the defendants entitled to judgment as a matter of law on Parrish's access to courts claim where there is no evidence to support that either defendant intentionally delayed postage on his notice of appeal?
3. In any event, are the defendants entitled to qualified immunity?

Defendants are not entitled to qualified immunity on the arguments currently advanced and evidence currently of record.

Plaintiff argues that because his appeal was denied as a result of its delay in Sand Ridge's mailroom, Plaintiff suffered an actual injury as a result of the employees' deliberate actions to deny him to the Courts.

A document is "deliberative" if the disclosure of the materials would expose an agency's decision making process in such a may as to discourage candid discussion within the agency and, thereby, undermine the agency's ability. Deliberate delay in the delivery of an inmate's legal mail is sufficient to satisfy the intent requirement for a right-of-access-claim. The mailroom held his mail allowing the "mail to accumulate until a sizable bundle had amassed,

1

and then forwarding it". In the present case mailing occurring after of the goods obtained by fraud are within the statute if they were designed to lull the victims into a false sense of security postpone their ultimate complaint to the authorities and make the apprehension of defendants less likely if no mailings had taken place.

Plaintiffs' claims are founded in the Fourteenth Amendment Right to Due Process. The Due Process Clause of the Fourteenth Amendment provides that "[n]o state ... shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. To breach the shield of qualified immunity by establishing a "violation of Substantive due process rights by an ... official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the ... officials was socking to the 'contemporary conscience.' "Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007) (quoting Cnty. Of Sacraments v. Lewis, 523 U.S. 833, 847 n.8, S.ct. 1708, 140 L.Ed.2d 1043 (1998)).

In the instant case Plaintiffs' substantive due process claims are derived from their liberty interest see. Wilson v. Lawrence Cnty., 260 F.3d 946, 956 n.8 (8th Cir. 2001). Plaintiffs claim right to a fair proceeding was violated in three separate respects. First **the mailroom held his mail allowing the "mail to accumulate until a sizable bundle had amassed, and then forwarding it".** . Second **Fabricated evidence about [payroll]:** Third **Fabricated evidence about "First-Class Postage"**

"Systematic pressure to implicate the Defendant in the face of contrary evidence." Akins, 588 F.3d at 1184, a manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame postal stamp see. Whitlock v. Brueqqemann, 682 F.ed 567, 585 (7th Cir. 2012) ("significantly, all courts that have directly confronted the question before us agree that the deliberate manufactured of false evidence contravenes the Due Process Clause"); Devexeaux v. Abbey, 263 F.3d 1070, 1076-77 (9th Cir. 2001) (en banc) (failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false to evidence is quite another") As in this case, a failure to investigate claim may be inextricably bound with a false evidence claim, where the plaintiffs' theory is that investigators recognized deficiencies in a case and manufactured false evidence to fill those gaps Cf. Moran v. Clarke, 296 F.3d 638, 647-48 (8th Cir. 2002)] (en banc) (denying qualified immunity where substantive due process claim was based on evidence that investigators "purposely ignored" exculpatory evidence, placed pressures on witnesses to incriminate a specific person, and manufactured evidence):

> Plaintiffs in this case have also presented sufficient evidence to allow the reasonable inference that Defendants purposefully manufactured false evidence to implicate Plaintiffs' failure to pay postage on time dooms this appeal. Although he declared that the postage had been prepaid when he deposited his notice of appeal in the prison mail system, the director's letter and the record of his trust account show otherwise. These documents establish that, when Plaintiff deposited the notice of appeal in the prison's mail system, he had not yet affixed a stamp and relying on staff to meter the envelope and withdraw the amount needed from his account, which had inadequate funds to cover the postage.

2

## "FIRST AMENDMENT RIGHTS"

10. The rights of prisoners under the First Amendment of the United States Constitution relate primarily to regulations governing correspondence, visits and reading material.

11. The 1971 Rules and Regulations of the Nevada State Prison include the following:

'2301--*POLICY REGARDING MAIL:*
12. 'It is considered essential to eventual resocialization of prison inmates that they maintain contact with their families and desirable friends by use of the mail privilege. Therefore, inmates are encouraged to make use of the mail privilege.

'2303--*MAIL PRIVILEGES:*
13. 'The sending and receiving of mail is a privilege--NOT A RIGHT. Any violation of the rules regarding the mail privilege by either the inmate or his correspondent may cause suspension of mail privileges.

'*USE OF THE MAIL PRIVILEGE:*
14. 'The warden shall establish regulations governing inmate correspondence. Such regulations shall not be inconsistant (sic) or in conflict with the following provisions:

'1. All correspondence, packages and personal property, sent or received by an inmate, may be inspected and censored. (No inmate shall be permitted to send or receive a package or communication of any nature until he has signed the required form consenting to the opening of same and examination of the contents.) This shall not preclude correspondence

3

Between an Attorney-of-Record and his client.

'2. No C.O.D. mail or C.O.D. articles of any kind will be accepted for an inmate.

'3. The system to provide for the payment of postage shall include adequate safeguards against the misuse of stamps and stamped envelopes. At no time will an inmate be permitted to have in his possession more than the number of stamped envelopes and postal cards prescribed by the institutional regulations.

'4. Any inmate who has less than one dollar in his current account may be supplied with a stamped envelope and/or postage for one letter each calendar week.

'5. Inmates shall be limited to the standing reasonable number of letters each week as determined by the institutional regulations.

'6. No articles or merchandise of any kind may be received by inmates unless specifically approved by the institutional regulations.

'7. Inmates may not send or receive letters that pertain to criminal activities; nor lewd, obscene, defamatory, contraband materials, or any other material inappropriate to their rehabilitation.

4

'8. Persons shall not be permitted to correspond with more than one inmate unless it is established that the correspondent is an immediate relative of the inmate concerned. Any exception must be approved by the Warden or his delegate.

'9. Inmates may not send registered or certified mail or any communication or article requiring a return receipt without the permission of the Warden or his delegate. Nothing in these rules shall deprive an inmate of correspondence with his or her attorney or with Courts having jurisdiction over matters of legitimate concern to him or her.

'10. Funds from individual donors may be sent to inmates only by money orders or certified checks which indicate the name and relationship to the inmate to whom the money is sent.

'11. Newspapers and periodicals on the approved list of each institution may be subscribed to the inmates through the established channels and must come directly from the publisher.

'12. Except with the permission of the Warden or his delegate inmates shall not correspond with other inmates or ex-inmates of any correctional institution. The Warden or his delegate shall ascertain if correspondents are on probation or parole; if so, they must have permission of their supervisor to correspond.

5

## "ACCESS TO JUDICIAL PROCESS"

> [12] The concept of a prisoner's constitutional right to access to the courts is founded on the Due Process Clause. Here, again, the Supreme Court has spoken with considerable definitiveness. There are three major aspects to the problem, (1) communication with courts and attorneys; (2) legal assistance; and (3) access to legal reference materials.

> [13] A prisoner's right to communicate by mail with court officials and with attorneys cannot be curtailed or restricted, although the state is under no obligation to provide the means of communication, i.e., stamps. All legal mail must leave the prison unopened and uncensored. Any incoming legal mail may be opened in the presence of the prisoner for the detection of contraband, but cannot be read or censored by the prison officials. These principles we find to be established by > Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In > Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), a prisoner had been disciplined for giving legal assistance to other prisoners. The Supreme Court said:

'Even in the absence of such alternatives, the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations of the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities. Cf. > Hatfield v. Bailleaux, 290 F.2d 632 (C.A. 9th Cir. 1961) (sustaining as reasonable regulations on the time and location of prisoner work on their own petitions). But unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners.'

Respectfully submitted'

KENNETH R. PARRISH